**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**
**www.flmb.uscourts.gov**

In re:                                          Chapter 11

TRUTH TECHNOLOGIES, INC.,                       Case No.  9:18-bk-05608-FMD

Debtor.

_____/


## DEBTOR'S AMENDED PLAN OF REORGANIZATION


*/s/ Michael R. Dal Lago*
Michael R. Dal Lago
Florida Bar No. 102185
**DAL LAGO LAW**
999 Vanderbilt Beach Road
Suite 200
Naples, FL 34108
Telephone:  239-571-6877
mike@dallagolaw.com

*Counsel for Debtor and*
*Debtor-in-Possession, Truth*
*Technologies, Inc.*


Dated as of February 7, 2019

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS AMENDED PLAN OF REORGANIZATION ("***AMENDED PLAN***") SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE AMENDED PLAN UNTIL SUCH TIME AS A DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, FORT MYERS DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR ENTITLED TO VOTE ON THE AMENDED PLAN. THE DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED, OR AN AMENDED AND RESTATED, AMENDED PLAN AND AN AMENDED, OR AN AMENDED AND RESTATED, DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER.   REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF THE DEBTOR'S HISTORY, BUSINESS, PROPERTY, AND OPERATIONS, THE PROJECTIONS FOR THE DEBTOR'S FUTURE OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE BANKRUPTCY CASE, A SUMMARY OF THE MEANS OF IMPLEMENTING THE AMENDED PLAN, AND THE PROCEDURES FOR VOTING ON THE AMENDED PLAN. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE AMENDED PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE AMENDED PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE AMENDED PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

**TABLE OF CONTENTS**

ARTICLE 1  INTRODUCTION                                                                1
ARTICLE 2  DEFINED TERMS; RULES OF CONSTRUCTION                      2
       2.1 Defined Terms.                                                        2
       2.2 Rules of Construction.                                             13
ARTICLE 3  TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
       PRIORITY TAX CLAIMS                                              13
       3.1 Administrative Expense Claims.                             13
       3.2 Priority Tax Claims.                                               14
ARTICLE 4  DESIGNATION OF CLASSES OF CLAIMS                         14
       4.1 Class 1: Priority Claims.                                        14
       4.2 Class 2: All Secured Claims of X.                           14
       4.3 Class 3: All Other Secured Claims.                        14
       4.4 Class 4: Unsecured Claims.                                   14
       4.5 Class 6: Equity Interests.                                       15

ARTICLE 5  TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS      15

ARTICLE 6  ACCEPTANCE OR REJECTION OF THE AMENDED PLAN        16
       6.1 Each Impaired Class Entitled to Vote Separately.           16
       6.2 Acceptance by Impaired Classes.                            16
       6.3 Presumed Acceptance of Amended Plan by Unimpaired Classes.     17
       6.4 Impairment Controversies.                                    17
ARTICLE 7  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
       LEASES                                                                  18
                                                                               19
ARTICLE 8  MEANS OF IMPLEMENTATION OF THE AMENDED PLAN        19
       8.1 Vesting of Certain Assets of the Estate in the Debtor.     19
       8.2 Corporate Existence.                                           19
       8.3 Corporate Action.                                              20
       8.4 Section 1146 Exemption.                                      20
       8.5 Effectuating Documents; Further Transactions.            20
       8.6 Pursuit of Causes of Action.                                 20
       8.7 Exclusivity Period.                                             22
       8.8 Prosecution and Settlement of Litigation Claims.         22
       8.9 Third Party Releases and Injunction in Favor of Guarantor.     22
ARTICLE 9  PROVISIONS GOVERNING DISTRIBUTIONS                   23
       9.1 Cash Distributions.                                             23
       9.2 Determination of Claims.                                     23
       9.3 Distributions as to Allowed Claims.                        24
       9.4 Unclaimed Distributions.                                     24
       9.5 Transfer of Claim.                                              25
       9.6 One Distribution Per Holder.                                25
       9.7 Effect of Pre-Confirmation Distributions.                25
       9.8 No Interest on Claims.                                        25

9.9 Compliance with Tax Requirements. 26
ARTICLE 10 CONDITIONS PRECEDENT TO CONFIRMATION OF THE AMENDED PLAN
AND THE EFFECTIVE DATE 26
10.1 Conditions Precedent to Confirmation of the Amended Plan. 26
10.2 Conditions Precedent to the Effective Date. 26
10.3 Notice of the Effective Date. 26
ARTICLE 11 DISCHARGE, EXCULPATION FROM LIABILITY, RELEASE, AND GENERAL INJUNCTION 27
11.1 Discharge of Claims and Termination of Equity Interests. 27
11.2 Exculpation from Liability. 27
11.3 General Injunction. 28
11.4 Terms of Existing Injunctions or Stays. 28
11.5 No Liability for Tax Claims. 29
ARTICLE 12 RETENTION OF JURISDICTION 29
12.1 General Retention. 29
12.2 Specific Purposes. 29
12.3 Reopening of Bankruptcy Case. 31
ARTICLE 13 MODIFICATION OF AMENDED PLAN AND CONFIRMATION OVER OBJECTIONS 32
13.1 Modification of Amended Plan. 32
13.2 Confirmation Over Objections. 32
ARTICLE 14 MISCELLANEOUS PROVISIONS 33
14.1 No Admissions. 33
14.2 Revocation or Withdrawal of the Amended Plan. 33
14.3 Standard for Approval of the Bankruptcy Court. 33
14.4 Further Assurances. 33
14.5 Headings. 33
14.6 Notices. 33
14.7 Governing Law. 34
14.8 Limitation on Allowance. 34
14.9 Estimated Claims. 34
14.10 Consent to Jurisdiction. 34
14.11 Setoffs. 34
14.12 Successors and Assigns. 35
14.13 Modification of Payment Terms. 35
14.14 Entire Agreement. 35
14.15 Severability of Amended Plan Provisions. 35
14.16 Controlling Document. 35
14.17 Computation of Time. 36
14.18 Substantial Consummation. 36
14.19 De Minimis Distributions. 36

### INDEX TO EXHIBITS TO AMENDED PLAN

Exhibit A – Assumed Contracts and Leases
Exhibit B – Rejected Contracts and Leases
Exhibit C – List of Potential Avoidance Actions

# ARTICLE 1
# INTRODUCTION

Truth Technologies, Inc. ("***Debtor***") hereby proposes the following Amended Plan of Reorganization ("***Amended Plan***"), which Amended Plan provides for the reorganization of the Debtor's business and financial affairs for the benefit of the Estate, and the resolution of outstanding Claims against the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code. The Debtor requests Confirmation of the Amended Plan pursuant to Section 1129 of the Bankruptcy Code. Unless otherwise defined, capitalized terms used in the Amended Plan shall have the meanings ascribed to such terms in Article 2.1 of the Amended Plan.

**This Amended Plan provides for (a) releases of claims against Egide Thein, the principal of the Debtor, as guarantor of certain debts owed by the Debtor; and (b) an injunction prohibiting enforcement of any such claims, all as provided in Article 8.11 below.**

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Rule 3019 of the Bankruptcy Rules, and those restrictions on modifications to the Amended Plan set forth in the Amended Plan, the Debtor expressly reserves the right to alter, amend, modify, revoke or withdraw the Amended Plan, one or more times, prior to the Effective Date of the Amended Plan.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Amended Plan cannot be solicited from the Holder of a Claim or Equity Interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Equity Interests. It is anticipated that the Disclosure Statement will be approved by the Bankruptcy Court on a conditional basis, and that the Disclosure Statement will be distributed simultaneously with the Amended Plan to all Holders of Claims and Equity Interests whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, business, properties, and operations, (b) a summary of significant events which have occurred to date in the Bankruptcy Case, (c) a summary of the means of implementing and funding the Amended Plan, and (d) the procedures for voting on the Amended Plan. Unless otherwise ordered by the Bankruptcy Court, no materials, other than the Amended Plan and the accompanying Disclosure Statement, Disclosure Statement Approval Order, and the Ballot, have been approved by the Debtor or the Bankruptcy Court for use in soliciting acceptances or rejections of the Amended Plan.

ALL HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR ENTITLED TO VOTE ON THE AMENDED PLAN ARE ENCOURAGED TO READ THE AMENDED PLAN AND THE DISCLOSURE STATEMENT, AND ANY EXHIBITS ATTACHED THERETO, IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE AMENDED PLAN.

IN THE OPINION OF THE DEBTOR, THE TREATMENT OF CLAIMS UNDER THE AMENDED PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE

1

REORGANIZATION OR LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE AMENDED PLAN IS IN THE BEST INTERESTS OF CREDITORS AND HOLDERS OF EQUITY INTERESTS, AND THE DEBTOR RECOMMENDS THAT CREDITORS AND HOLDERS OF EQUITY INTERESTS VOTE TO ACCEPT THE AMENDED PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE AMENDED PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, THE PROJECTIONS FOR THE FUTURE OPERATIONS OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE AMENDED PLAN ON HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY.

THE AMENDED PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING OR SELLING OR TRANSFERRING SECURITIES OF THE DEBTOR, TO THE EXTENT APPLICABLE, SHOULD EVALUATE THE AMENDED PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

## ARTICLE 2
## DEFINED TERMS; RULES OF CONSTRUCTION

2.1    **Defined Terms.**

2.1.1    As used in the Amended Plan, the following terms (which appear in the Amended Plan as capitalized terms) shall have the meanings set forth below:

**"Administrative Expense"** means (a) any cost or expense of administration of the Bankruptcy Case under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court approved pleading seeking such expense in the Bankruptcy Case on or before the applicable Administrative Expense Claim Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of its business, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Postpetition tax year or period, and (v) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an Order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) any Superpriority Claim, if any; (c) all fees and charges assessed against the Estate under Chapter 123

of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Bankruptcy Case that are allowed by a Final Order of the Bankruptcy Court; provided, however, that, when used in the Amended Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Cure Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Amended Plan, any of the Claims in Classes 1 through 10. In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes - and for interest and/or penalties related to such taxes - due from the Debtor for any Postpetition tax year or period).

"**Administrative Expense Claim**" means any Claim for the payment of an Administrative Expense.

"**Administrative Expense Claim Bar Date**" means the date(s) established by one or more Orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Claim, including as established in the Disclosure Statement Approval Order; provided, however, that (a) to the extent the Bankruptcy Court has entered an Order establishing a different and specific deadline for a Creditor or other party in interest to file an Administrative Expense Claim, the date set forth in such Order shall be deemed to be the Administrative Expense Claim Bar Date as to such Creditor or other party in interest, and (b) the Administrative Expense Claim Bar Date shall not apply to liabilities incurred in the ordinary course of business after the Administrative Expense Claim Bar Date but before the Effective Date. Any Holder of an Administrative Expense Claim (including a Holder of a Claim for Postpetition federal, state or local taxes) that does not file an application, motion, request or other Bankruptcy Court-approved pleading by the applicable Administrative Expense Claim Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against the Debtor or the Estate, or any of their respective Properties, and such Holder shall not be entitled to participate in any Distribution under the Amended Plan on account of any such Administrative Expense Claim.

"**Allowed Amount**" means the dollar amount in which a Claim is allowed.

"**Allowed Claim**" means a Claim or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, or, by Order of the Bankruptcy Court, was not required to be so filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, but which has been, or hereafter is, listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) and (b) above, as to which either (i) no objection to the allowance of such Claim has been filed within the time allowed for the making of objections as fixed by the Amended Plan, the Bankruptcy Code, the Bankruptcy Rules, or an Order of the Bankruptcy Court, or (ii) any objection as to the allowance of such Claim has been settled or withdrawn or has been overruled by a Final Order. "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court in a Final Order. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a

corresponding meaning.

**"Allowed Class ... Claim"** means an Allowed Claim in the particular Class described (i.e., an "Allowed Class 1 Claim".)

**"Assumed Contracts"** has the meaning ascribed to such term in Article 7 of the Amended Plan.  A list of Assumed Contracts is set forth on Exhibit A attached to the Amended Plan (which list is not intended to be a complete list).

**"Avoidance Actions"** means any and all actions to avoid or recover a transfer of Property of the Debtor's Estate or an interest of the Debtor in Property, which a trustee, debtor in possession or other appropriate party in interest, may assert on behalf of the Debtor's Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or under any other similar applicable federal, state or common law, regardless of whether or not such action has been commenced prior to the Effective Date.

**"Ballot"** means the Ballot, accompanying the Disclosure Statement and the Amended Plan, on which Holders of Claims that are entitled to vote on the Amended Plan may indicate their acceptance or rejection of the Amended Plan in accordance with the Voting Instructions.

**"Bankruptcy Case"** means the case of the Debtor currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which case was commenced by the Debtor on the Petition Date bearing Case No. 9:18-bk-05608-FMD.

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

**"Bankruptcy Counsel"** means Dal Lago Law.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida, Fort Myers Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as promulgated under Section 2075 of Title 28 of the United States Code, and the Local Rules, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

**"Bar Date"** means November 12, 2018, the date set by the Bankruptcy Court as the last day for filing a Proof of Claim against the Debtor in the Bankruptcy Case, excluding (a) a Prepetition Claim of a Governmental Unit, for which a Proof of Claim must have been filed with the Bankruptcy Court by the Governmental Unit Bar Date, (b) an Administrative Expense Claim, for which a request for payment of an Administrative Expense must be filed with the Bankruptcy

Court before the Administrative Expense Claim Bar Date, (c) a Claim for which a bar date may have been otherwise established by a Final Order of the Bankruptcy Court, for which a Proof of Claim must be filed with the Bankruptcy Court by the date set forth in such Final Order, and (d) a Claim with respect to an executory contract or unexpired lease that is assumed or rejected pursuant to the Amended Plan (as to which the bar date shall be as set forth in Article 7.3 of the Amended Plan) or a Final Order of the Bankruptcy Court (as to which the bar date shall be as set forth in such Final Order).

**"Business Day"** means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday" (as "legal holiday" is defined in Rule 9006(a) of the Bankruptcy Rules), or (d) a day on which commercial banks in Fort Myers, Florida are required or authorized to be closed by law.

**"Cash"** means cash, cash equivalents, and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Amended Plan with respect to a Distribution under the Amended Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Debtor drawn on a domestic bank.

**"Claim"** has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Amended Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of claim, whenever and wherever such claim may arise.

**"Class"** means a category of Claims or Equity Interests classified together as described in Article 4 of the Amended Plan.

**"Clerk"** means the Clerk of the Bankruptcy Court.

**"Clerk's Office"** means the Office of the Clerk of the Bankruptcy Court located at the Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, 5th Floor, Tampa, Florida 33602.

**"Collateral"** means Property in which the Estate has (or had) an interest and that secures (or secured), in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

**"Confirmation"** or **"Confirmation of the Amended Plan"** means the approval of the Amended Plan by the Bankruptcy Court at the Confirmation Hearing.

**"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket by the Clerk pursuant to Rule 5003(a) of the Bankruptcy Rules.

**"Confirmation Hearing"** means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Amended Plan and related matters pursuant to

Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time. The date of the Confirmation Hearing is set forth in the Disclosure Statement Approval Order.

"**Confirmation Order**" means the Order of the Bankruptcy Court in the Bankruptcy Case confirming the Amended Plan pursuant to Section 1129 and other applicable Sections of the Bankruptcy Code, as such Order may be amended, modified or supplemented.

"**Creditor**" means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, or Cure Claims.

"**Cure Claim**" means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtor pursuant to Section 365(b) of the Bankruptcy Code or otherwise, and any Claim for a default (monetary or non-monetary), arising from, relating to or in connection with the assumption by the Debtor of any Assumed Contract (provided such Claim is filed with the Bankruptcy Court in accordance with Article 7 of the Amended Plan). In no event shall any Claim set out in a Proof of Claim be deemed to be a Cure Claim unless as otherwise agreed to by the Debtor.

"**Cure Claim Submission Deadline**" means the date that is no later than (a) the Voting Deadline, or (b) fourteen (14) days after notice of an amendment to Exhibit A of the Amended Plan.

"**Debt**" has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

"**Debtor**" means Truth Technologies, Inc.

"**Debtor in Possession**" means Truth Technologies, Inc., as Debtor in possession in the Bankruptcy Case.

"**Determination Date**" means the later of (i) the Effective Date, and (ii) the date the Order of the Bankruptcy Court allowing a Claim becomes a Final Order (if applicable).

"**Disallowed Claim**" means any Claim which has been disallowed by an Order of the Bankruptcy Court, which Order has not been stayed pending appeal.

"**Disclosure Statement**" means the Disclosure Statement for Debtor's Amended Plan of Reorganization, dated as of November [DAY], 2018, including all Exhibits attached thereto, as submitted and filed by the Debtor pursuant to Section 1125 of the Bankruptcy Code in respect of the Bankruptcy Case and approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

"**Disclosure Statement Approval Order**" means the Order Conditionally

Approving Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of Amended Plan, and Setting Deadlines with Respect to Confirmation Hearing.

**"Disputed Claim"** means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or Order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) and (b) above, as to which an objection has been or may be timely filed or deemed filed under the Amended Plan, the Bankruptcy Code, the Bankruptcy Rules, or an Order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled by an Order of the Bankruptcy Court, or (iii) sustained by an Order of the Bankruptcy Court.  In addition to the foregoing, a Disputed Claim shall mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the amount subject to objection.  "Disputed," when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, etc.), has a corresponding meaning.

**"Distribution"** means a distribution of Cash to a Creditor on account of an Allowed Claim pursuant to the terms of the Amended Plan.

**"Distribution Date"** means, when used with respect to an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) or an Allowed Priority Tax Claim, the date which is as soon as reasonably practicable (as determined by the Debtor) after the Determination Date, but in no event more than ten (10) days after the Determination Date. "Distribution Date," when used with respect to an Allowed Claim in Classes 1 through 10, as applicable, means the date or dates for any Distribution to Holders of Allowed Claims in Classes 1 through 10 as provided in the Amended Plan, unless such date or dates have been otherwise established by an Order of the Bankruptcy Court.

**"Docket"** means the docket or dockets in the Bankruptcy Case maintained by the Clerk.

**"Effective Date"** means, and shall occur on, the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date contained in Article 10 of the Amended Plan have been satisfied following the Confirmation Order or waived by the Debtor.

**"Effective Date Notice"** has the meaning ascribed to such term in Article 10 of the Amended Plan.

"**Entity**" has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

"**Equity Interests**" means the membership interests or shares in the Debtor held by the Members or Shareholders, which constitutes one hundred percent (100%) of the ownership interests in the Debtor.

"**Estate**" means the bankruptcy estate created for the Debtor by Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

"**Estimation Hearing**" means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

"**Exculpated Parties**" has the meaning ascribed to such term in Article 11 of the Amended Plan.

"**Executory Contracts**" means contracts and unexpired leases, to which the Debtor is a party, that are subject to assumption or rejection under Section 365 of the Bankruptcy Code.

"**Exhibit**" means an exhibit annexed to the Amended Plan or to the Disclosure Statement, as the context requires.

"**Final Decree**" means the final decree for the Bankruptcy Case entered by the Bankruptcy Court after the Effective Date pursuant to Rule 3022 of the Bankruptcy Rules.

"**Final Decree Date**" means the date on which the Final Decree, obtained after a hearing on notice to the Notice Parties and to such other Persons and Entities as the Bankruptcy Court may direct, is entered on the Docket for the Bankruptcy Case.

"**Final Order**" means (a) an order, judgment, ruling or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other Federal Court as may have jurisdiction over any proceeding in connection with the Bankruptcy Case for the purpose of such proceeding, which Order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, re-argument, rehearing, reconsideration or certiorari has been taken and is pending, and the time for the filing of any such appeal, petition for review, re-argument, rehearing, reconsideration or certiorari has expired, (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

"**Governmental Unit**" has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

"**Governmental Unit Bar Date**" means January 02, 2019, the date set by Section 502(b)(9) of the Bankruptcy Code as the last day for a Governmental Unit to file a Proof of Claim

against the Debtor in the Bankruptcy Case.

"**Guarantor**" means either Mr. Egide Thein.

"**Holder**" means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtor or as otherwise determined by Order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtor have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and, (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the register that is maintained by the Debtor or as otherwise determined by Order of the Bankruptcy Court.

"**Impaired**" refers to any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Indemnification Rights**" means any obligations or rights of the Debtor to indemnify, reimburse, advance, or contribute to the losses, liabilities or expenses of an Indemnitee pursuant to the Debtor's articles or certificate of incorporation, articles of organization, bylaws, operating agreement, partnership document, or policy of providing indemnification, applicable law, or a specific agreement in respect of any claims, demands, suits, causes of action or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtor.

"**Indemnitee**" means all present and former directors, officers, employees, agents or representatives of the Debtor who are entitled to assert Indemnification Rights.

"**Insider**" has the meaning ascribed to such term in Section 101(31) of the Bankruptcy Code.

"**IRS**" means the Internal Revenue Service.

"**Liabilities**" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any predecessor, successor or assign thereof, any Property of the Debtor, the business or operations of the Debtor, the Bankruptcy Case, or the Amended Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

"**Lien**" means, with respect to any Property, any mortgage, pledge, security

interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

"**Litigation Claims**" means any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor, whether arising before or after the Petition Date, including, without limitation, those which are: (i) property of the Estate under and pursuant to Section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (v) related to federal or state securities laws; (vi) direct or derivative claims or causes of action of any type or kind; (vii) under and pursuant to any policies of insurance maintained by the Debtor; (viii) for collection on accounts, accounts receivable, loans, notes receivable or other rights to payment; (ix) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (x) which arise under or as a result of any Section of the Bankruptcy Code, including Section 362; (xi) which may be available to the Debtor against any third party(ies) under any legal or equitable theory, whether or not specifically identified or described herein or in the Disclosure Statement, and (xii) to the extent not otherwise set forth above, as described in the Disclosure Statement.

"**Local Rule Service List**" means the "Local Rule 1007(d) Parties in Interest List" for the Bankruptcy Case, as that term is defined in Rule 1007-2(b) of the Local Rules.

"**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

"**Notice Parties**" means (a) the Debtor, (b) Bankruptcy Counsel, (c) the United States Trustee, and (d) all parties then set forth on the Local Rule Service List.

"**Person**" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

"**Petition Date**" means July 6, 2018, the date on which the Debtor commenced the Bankruptcy Case by filing its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

"**Amended Plan**" means the Debtor's Amended Plan of Reorganization, dated as of January 15, 2019, and all Exhibits to the Amended Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the

10

provisions of the Amended Plan and the Bankruptcy Code.

"**Amended Plan Documents**" means all documents that aid in effectuating the Amended Plan.

"**Postpetition**" means arising or accruing on or after the Petition Date and before the Effective Date.

"**Pre-Petition**" means arising or accruing prior to the Petition Date.

"**Pre-Petition Lenders**" means, collectively, the entities that are listed in Classes 1 through 7.

"**Priority Claim**" means a Claim that is entitled to a priority in payment pursuant to Sections 507(a)(4), (5) and (7) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, a Non-Insider Unsecured Claim or an Insider Unsecured Claim.

"**Priority Tax Claim**" means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim, a Non-Insider Unsecured Claim or an Insider Unsecured Claim.

"**Professional**" means any professional employed in the Bankruptcy Case pursuant to an Order of the Bankruptcy Court and Section 327 or 1103 of the Bankruptcy Code.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court with respect to a Claim against the Debtor pursuant to Rule 3001, 3002 or 3003 of the Bankruptcy Rules.

"**Property**" means any property or asset of any kind owned by the Debtor, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

"**Pro Rata Share**" means, with respect to any Distribution under the Amended Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date.

"**Rejected Contracts**" has the meaning ascribed to such term in Article 7 of the Amended Plan.  A list of the Rejected Contracts is set forth in Exhibit B attached to the Amended Plan.

"**Schedules**" means, collectively, Schedules A, B, C, D, E, F, G, and H filed by the Debtor in the Bankruptcy Case pursuant to Rule 1007 of the Bankruptcy Rules, as any such

Schedules has been or may hereafter be amended or supplemented from time to time.

**"Secured Tax Claim"** means a Secured Claim of a Governmental Unit for Prepetition taxes.

**"Security"** has the meaning ascribed to such term in Section 101(49) of the Bankruptcy Code.

**"Superpriority Claim"** means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Section 364(c)(1) of the Bankruptcy Code.

**"Unimpaired"** refers to a Claim that is not Impaired.

**"United States Trustee"** means the Office of the United States Trustee for Region 21.

**"Unsecured Claim"** means any Claim that is not secured by Collateral belonging to the Debtor, which is not otherwise classified in the Amended Plan, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) except as otherwise provided in the Amended Plan, any portion of a Secured Claim to the extent the value of the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Amended Plan.

**"Unsecured Creditor"** means any Creditor holding an Unsecured Claim.

**"Voting Deadline"** means the last day to file, with the Bankruptcy Court, a Ballot accepting or rejecting the Amended Plan as fixed by the Disclosure Statement Approval Order.

**"Voting Instructions"** means the instructions for voting on the Amended Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and in the Ballot.

2.1.2    Any capitalized term used in the Amended Plan that is not defined in the Amended Plan, but that is defined in the Bankruptcy Code or in the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

2.2    **Rules of Construction.**

For purposes of the Amended Plan: (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Amended Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Amended Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the Amended Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Amended Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Amended Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Amended Plan in its entirety rather than to a particular Article or section or subsection of the Amended Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Amended Plan shall be deemed incorporated herein by any such reference and made a part hereof for all purposes; (i) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; and, (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in the construction of the Amended Plan, to the extent such rules are not inconsistent with any other provision in this Article 2.2.

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Amended Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below in this Article 3.

3.1    **Administrative Expense Claims.**

3.1.1    Except as otherwise provided in Articles 3.1.2 and 3.1.3 below, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid (a) on the Distribution Date, in Cash by the Debtor equal to the Allowed Amount of its Allowed Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

3.1.2    All unpaid fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930 for any calendar quarter ending prior to the Effective Date shall be paid to the United States Trustee by the Debtor by no later than thirty (30) days following the Effective Date. Following the Effective Date, any fees required to be paid to the United States Trustee, pursuant to 28 U.S.C. §1930(a)(6), with respect to the

Bankruptcy Case shall be paid by the Debtor until the earlier of (i) the closing of the Bankruptcy Case by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an Order by the Bankruptcy Court dismissing the Bankruptcy Case or converting the Bankruptcy Case to another chapter under the Bankruptcy Code. Any such payment to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6).

3.1.3   All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid by the Debtor (a) in the ordinary course of business in accordance with contract terms, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

## 3.2    Priority Tax Claims.

Such Claims consist of Unsecured Claims of governmental units for taxes allowed under Bankruptcy Code §507(a)(8). The holders of Allowed Priority Tax Claims will receive Tax Notes on account of such Claims. The Tax Notes will have the following terms:

1. Principal equal to the amount of the Allowed Priority Tax Claims;
2. Interest at a rate equal to the rate determined under applicable nonbankruptcy law;
3. The rate will be determined as of the calendar month in which the Amended Plan is confirmed; and,
4. Equal monthly payments of principal and interest commencing 60 days after the Effective Date and on the same date of each month thereafter over a period not exceeding five (5) years following the Petition Date.

## ARTICLE 4
## CLASSIFICATION OF CLAIMS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests:

## 4.1    Class 1

This class consists of the secured claims held by Newtek Small Business Finance Inc., ("***Newtek***"), but only to the extent that it is allowed as a secured claim under Section 506 of the Bankruptcy Code.

## 4.2    Class 2

This class consists of the secured claims held by Regions Bank ("**Regions**"), but only to the extent that it is allowed as a secured claim under Section 506 of the Bankruptcy Code.

### 4.3    Class 3

This class consists of the secured claim held by Synovus Bank ("**Synovus**"), but only to the extent that it is allowed as a secured claim under Section 506 of the Bankruptcy Code.

### 4.4    Class 4

This class consists of any alleged secured claims that are held by Complete Business Solutions Group, Inc. ("**CBSG**") d/b/a Par Funding.

### 4.5    Class 5

This class consists of any alleged secured claims that are held by Kash Capital, LLC, d/b/a Empire Funding ("**Kash**").

### 4.6    Class 6

This class consists of any alleged secured claims that are held by Queen Funding, LLC, a/k/a GTR Queen ("**Queen Funding**").

### 4.7    Class 7

This class consists of any alleged secured claims that are held by E Advance Svcs, LLC, a/k/a CAPCALL ("**CapCall**").

### 4.8    Class 8

This Class consists for all allowed claims entitled to priority under Section 507(a) of the Bankruptcy Code, except administrative expense claims under Section 507(a)(2) and priority tax claims under Section 507(a)(8).

### 4.9    Class 9

This Class consists of all non-priority unsecured claims allowed under Section 502 of the Code.

### 4.10    Class 10

This Class consists of parties who hold an ownership interest (i.e., equity interest) in the Debtor.

# ARTICLE 5
# TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**5.1**      **Class 1**

This class consists of the secured claim held by Newtek, but only to the extent that it is allowed as a secured claim under Section 506 of the Bankruptcy Code.  Such debt will be reinstated in accordance with the terms of the Confirmation Order and the Debtor will continue to make all future payments as they become due under the applicable loan documents commencing on the Effective Date.  Any pre-petition debt owed to the creditor will be cured within sixty (60) days from the date that the Confirmation Order is entered by the Court.

**5.2**      **Class 2**

This class consists of the secured claim held by Regions, but only to the extent that it is allowed as a secured claim under Section 506 of the Bankruptcy Code.  Such debt will be reinstated in accordance with the terms of the Confirmation Order and the Debtor will continue to make all future payments as they become due under the applicable loan documents commencing on the Effective Date.  Any pre-petition debt owed to the creditor will be cured within sixty (60) days from the date that the Confirmation Order is entered by the Court.

**5.3**      **Class 3**

This class consists of the secured claim held by Synovus, but only to the extent that it is allowed as a secured claim under Section 506 of the Bankruptcy Code.  Such debt will be reinstated in accordance with the terms of the Confirmation Order and the Debtor will continue to make all future payments as they become due under the applicable loan documents commencing on the Effective Date.  Any pre-petition debt owed to the creditor will be cured within thirty days from the date that the Confirmation Order is entered by the Court.

**5.4**      **Class 4**

This Class consists of the alleged secured claim that was filed by CBSG.  To the extent that this claim is deem allowed by the Court, the Debtor will issue a promissory note to CBSG in the allowed amount of the claim, which will be paid in equal monthly installments over the period of sixty (60) months without interest. Any liens on the Debtor's property held by CBSG shall be stripped from the property and expunged in their entirety.

**5.5**      **Class 5**

This Class consists of any alleged secured claims that are held by Kash.  These claims are disallowed under the Amended Plan and all collateral otherwise securing this claim shall be owned by the Debtor free and clear of all liens, claims, and encumbrances.   Any liens on the Debtor's property held by Kash Capital, LLC shall be stripped from the property and expunged in their entirety.  Furthermore, this debt was scheduled by the Debtor as DISPUTED and the creditor failed

16

to file a proof of claim in this case.  Therefore, the creditor is not eligible to vote on the Amended Plan.

**5.6**   <u>**Class 6**</u>

This Class consists of any alleged secured claims that are held by Queen Funding. These claims are disallowed under the Amended Plan and all collateral otherwise securing this claim shall be owned by the Debtor free and clear of all liens, claims, and encumbrances.   Any liens on the Debtor's property held by Queen Funding shall be stripped from the property and expunged in their entirety.  Furthermore, this debt was scheduled by the Debtor as DISPUTED and the creditor failed to file a proof of claim in this case.  Therefore, the creditor is not eligible to vote on the Amended Plan.

**5.7**   <u>**Class 7**</u>

This Class consists of any alleged secured claims that are held by CapCall. These claims are disallowed under the Amended Plan and all collateral otherwise securing this claim shall be owned by the Debtor free and clear of all liens, claims, and encumbrances.   Any liens on the Debtor's property held by E Advance Svcs, LLC shall be stripped from the property and expunged in their entirety.  Furthermore, this debt was scheduled by the Debtor as DISPUTED and the creditor failed to file a proof of claim in this case.  Therefore, the creditor is not eligible to vote on the Amended Plan.

**5.7**   <u>**Class 8**</u>

This Class consists for all allowed claims entitled to priority under Section 507(a) of the Bankruptcy Code, except administrative expense claims under Section 507(a)(2) and priority tax claims under Section 507(a)(8).  The Debtor knows of no claims that will be allowed as a priority claim under this class. To the extent that such a claim exists and is allowed, the Debtor shall make payment in full within sixty (60) days of the date that the Confirmation Order is entered, unless the Debtor and the creditor agree to alternative terms for payment.

**5.9**   <u>**Class 9**</u>

This Class consists of all non-priority unsecured claims allowed under Section 502 of the Code.  All creditors holding an allowed general unsecured claim in this class shall receive a forty percent (40%) distribution on their allowed claims.  Such distribution shall be paid in sixty (60) equal monthly installments without interest commencing on the first day of the month that occurs after the entry of the Confirmation Order, and continuing on the first day of each successive month thereafter until paid in full.  However, included in this class is general unsecured claim in the amount of approximately $850,000.00 that is held by the Debtor's principal, Mr. Egide Thien, for certain pre-petition loan that he made to the Debtor.  To the extent that the holders of allowed claims in this class vote in favor of the Amended Plan, Mr. Thien will waive his claim and the Debtor will pay a sixty percent (60%)distribution on the allowed claims.  Such distribution shall be paid in sixty (60) equal monthly installments without interest commencing on the first day of

the month that occurs after the entry of the Confirmation Order, and continuing on the first day of each successive month thereafter until paid in full.

**5.10**   **Class 10**

This Class consists of parties who hold an ownership interest (i.e., equity interest) in the Debtor. The Amended Plan provides that the current equity interests in the Debtor will be reinstated. In that regard, this Class is deemed to have accepted the Amended Plan.

**ARTICLE 6**
**ACCEPTANCE OR REJECTION OF THE AMENDED PLAN**

6.1   **Each Impaired Class Entitled to Vote Separately.**

Except as otherwise provided in Article 6.4, the Holders of Claims or Equity Interests in each Impaired Class of Claims or Impaired Class of Equity Interests shall be entitled to vote separately to accept or reject the Amended Plan.

6.2   **Acceptance by Impaired Classes.**

Only a Holder of a Claim in an Impaired Class is entitled to vote to accept or reject the Amended Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Amended Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Amended Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Amended Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Amended Plan.

6.3   **Presumed Acceptance of Amended Plan by Unimpaired Classes.**

Pursuant to Section 1126(f) of the Bankruptcy Code, any Unimpaired Class and the Holders of Claims in such Class are conclusively presumed to have accepted the Amended Plan and, thus, are not entitled to vote on the Amended Plan. Accordingly, votes of Holders of Claims in such Class are not being solicited by the Debtor. Except as otherwise expressly provided in the Amended Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

6.4   **Impairment Controversies.**

If a controversy arises as to whether any Claim, or any Class of Claims, is Impaired under the Amended Plan, such Claim, or Class shall be treated as specified in the Amended Plan unless

18

the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim, or a particular Class of Claims, under the Amended Plan.

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.1    Rejection of Executory Contracts and Unexpired Leases.

Except as set forth in Article 7.6, all executory contracts and unexpired leases that currently exist between the Debtor and another Person or Entity and that have not been expressly assumed (or assumed and assigned) or rejected by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date shall be deemed rejected by the Debtor as of the Confirmation Date (collectively, the "*Rejected Contracts*"); provided, however, the Debtor reserves the right, on or prior to the Confirmation Date, to assume (or assume and assign) any executory contract or unexpired lease by providing notice of such assumption to the party to the executory contracts and unexpired leases affected thereby.    All executory contracts and unexpired leases that are expressly assumed (or assumed and assigned) by the Debtor either in this Amended Plan or Order of the Bankruptcy Court shall collectively be referred to as the "*Assumed Contracts*."

### 7.2    Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article 7.1 hereof, (ii) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 7.1 hereof, and (iii) the extension of time, pursuant to Section 365(d)(4) of the Bankruptcy Code, within which the Debtor may assume, assume and assign, or reject any unexpired lease of nonresidential real property through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired lease. The assumption by the Debtor of an Assumed Contract shall be binding upon any and all parties to such Assumed Contract as a matter of law, and each such Assumed Contract shall be fully enforceable by the Debtor in accordance with its terms, except as modified by the provisions of the Amended Plan or an Order of the Bankruptcy Court.

### 7.3    Inclusiveness.

Unless otherwise specified, each executory contract and unexpired lease that is rejected or assumed shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is specifically referenced in this Amended Plan or in a notice of assumption provided under this Amended Plan.

7.4   **Cure of Defaults.**

Any lessor, lessee, or other party to an Assumed Contract (except those lessors, lessees, or other parties whose unexpired leases or executory contracts have been previously assumed by a Final Order of the Bankruptcy Court) asserting a Cure Claim in connection with the assumption of any unexpired lease or executory contract under Article 7.1, as contemplated by Section 365(b) of the Bankruptcy Code, must file such Cure Claim with the Bankruptcy Court on or before the Voting Deadline or other deadline ordered by the Court, asserting all alleged amounts accrued or alleged defaults through the Effective Date. Any lessor or other party to an Assumed Contract failing to file a Cure Claim by such deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Debtor. The Debtor shall have ninety (90) days from the Effective Date to file an objection to any Cure Claim. Any disputed Cure Claims shall be resolved either consensually or by the Bankruptcy Court. Except as may otherwise be agreed to by the parties, by no later than one hundred eighty (180) days following the Effective Date, the Debtor shall cure any and all undisputed Cure Claims. All disputed Cure Claims shall be cured either within one hundred twenty (120) days after the entry of a Final Order determining the amount, if any, of the Debtor' liabilities with respect thereto or as may otherwise be agreed to by the parties.

7.5   **Claims under Rejected Executory Contracts and Unexpired Leases**.

7.5.1   Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtor. With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be the Voting Deadline. The Amended Plan and any other Order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

7.5.2 All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims. Any such Claims that become Disputed Claims shall be Disputed Claims for purposes of administration of Distributions under the Amended Plan to Holders of Allowed Unsecured Claims.

7.6   **Insurance Policies**.

Unless and until rejected by the Debtor, the Debtor' insurance policies and any agreements, documents, or instruments relating thereto are treated as executory contracts under the Amended Plan and are assumed by the Debtor. Nothing contained in the Amended Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor may hold against any Person or Entity, including the insurers under any of the Debtor' insurance policies.

7.7     **Indemnification Rights.**

All Claims for Indemnification Rights against the Debtor by an Indemnitee for defense and indemnification shall be treated as prepetition, general Unsecured Claims.

**ARTICLE 8**
**MEANS OF IMPLEMENTATION OF THE AMENDED PLAN**

8.1     **Vesting of Certain Assets of the Estate in the Debtor**.

The property of the estate of the Debtor shall re-vest in the Debtor on the Effective Date, except as otherwise provided in the Amended Plan. On and after the Effective Date, the Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code. As of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests, except as specifically provided in the Amended Plan.

8.2     **Continued Existence.**

The Debtor will continue to exist after the Effective Date as a limited liability company under the applicable laws in the State of Florida and pursuant to its articles of organization and bylaws or other organizational documents in effect prior to the Effective Date, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date. The Debtor shall retain the ability to dissolve the Debtor's corporate existence as it deems necessary.

8.3     **Corporate Action**.

All matters provided for under the Amended Plan involving the corporate structure of the Debtor, or any corporate action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the Members of the Debtor.

8.4     **Section 1146 Exemption**.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer, pursuant to, in implementation of or as contemplated by the Amended Plan, or the vesting, re-vesting, transfer or sale of any assets, of, by or in the Debtor or its Estate pursuant to, in implementation of or as contemplated by the Amended Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental

21

assessment.

8.5    **Effectuating Documents; Further Transactions**.

The Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Amended Plan or to otherwise comply with applicable law.

8.6    **Pursuit of Causes of Action**.

8.6.1    On the Effective Date, the Causes of Action shall be retained by the Debtor, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Amended Plan or by a Final Order of the Bankruptcy Court.  The Debtor will have the rights, powers and privileges, in their sole and absolute discretion, to pursue, not pursue, settle, release or enforce any Causes of Action without seeking any approval from the Bankruptcy Court.  Any net recovery realized by a Debtor on account of such causes of action, shall be the property of the Debtor.  The Debtor is currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action.  For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor prior to the Petition Date or that received payments from the Debtor prior to the Petition Date may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. The Debtor will fund the costs and expenses (including legal fees) to pursue the Causes of Action.

8.6.2    No Creditor or other party should vote for the Amended Plan or otherwise rely on the Confirmation of the Amended Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action.  No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action.  ADDITIONALLY, THE AMENDED PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE DEBTOR.  Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Amended Plan for prosecution by the Debtor unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims.  As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Amended Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Amended Plan as any indication that the Debtor do not possess or do not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Amended Plan.  It is the expressed intention of the Amended Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Debtor's Estate. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Amended Plan or the Disclosure Statement; nor shall the Debtor, as a result of such failure, be estopped or precluded under any

theory from pursuing such Cause of Action. Nothing in the Amended Plan operates as a release of any of the Causes of Action, except as expressly provided otherwise.

8.6.3   The Debtor does not presently know the full extent of the Causes of Action, and for purposes of voting on the Amended Plan, all Creditors are advised that the Debtor will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action.  Accordingly, neither a vote to accept the Amended Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Amended Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Amended Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any *res judicata* or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Amended Plan.

8.6.4   Notwithstanding the foregoing, attached hereto as Exhibit C is a list of potential Avoidance Actions (in the form of the Debtor's response to question 3.b of the Statement of Financial Affairs) and other potential Causes of Action that will be preserved for the Debtor to analyze and, if necessary, pursue.

8.6.5   The Debtor reserves the right to pursue any or none of the Causes of Action in its sole discretion.

8.6.6   The Debtor reserves all rights under Section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims.


8.7   **Exclusivity Period**.

The Debtor will retain the exclusive right to amend or modify the Amended Plan, and to solicit acceptances of any amendments to or modifications of the Amended Plan, through and until the Effective Date.

8.8   **Prosecution and Settlement of Litigation Claims.**

The Debtor (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any Litigation Claim which the Debtor has, or had, the power to assert, immediately prior to the Effective Date, and (b) may settle or adjust such Litigation Claim.  From and after the Effective Date, the Debtor shall be authorized, pursuant to Rule 9019 of the Bankruptcy Rules and Section 105(a) of the Bankruptcy Code, to compromise and settle any Litigation Claim or objection to a Claim in accordance with the following procedures, which shall constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements: (i) if the resulting settlement provides for settlement of a Litigation Claim – or objection to a Claim – originally asserted in a face amount equal to or less than $50,000.00, than the Debtor may settle the Litigation Claim or

objection to Claim and execute necessary documents, including a stipulation of settlement or release without the necessity of an order of the Bankruptcy Court or further notice; and (ii) if the resulting settlement involves a Litigation Claim – or objection to a Claim – originally asserted in a face amount exceeding $50,000.00, than the Debtor shall be authorized and empowered to settle such Litigation Claim or objection to Claim only upon Bankruptcy Court approval in accordance with Rule 9019 of the Bankruptcy Rules.

8.9   **Third-Party Releases and Injunction in Favor of Guarantor**.

**As long as the Debtor is not in default under the Amended Plan with respect to the Allowed Claims Held by the Pre-Petition Lenders, than the Holders of such Allowed Claims shall be permanently enjoined and forever barred from taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Guarantor of such obligations; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Guarantor; and (c) creating, perfecting or enforcing any Lien or encumbrance against the Guarantor. The Guarantor shall have the right to independently seek enforcement of this injunction provision.**

## ARTICLE 9
## PROVISIONS GOVERNING DISTRIBUTIONS

9.1   **Cash Distributions**.

Within the times provided elsewhere in the Amended Plan and as required by the Amended Plan, the Debtor shall make the Cash distributions required by the Amended Plan.

9.2   **Determination of Claims.**

9.2.1   After the Effective Date, the Debtor shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment all objections to Claims. Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than sixty (60) days after the Confirmation Date (unless such period is extended by the Bankruptcy Court), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to file late Unsecured Claims on (i) the Debtor, (ii) Bankruptcy Counsel; and (iii) such other parties as the Bankruptcy Court may direct. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 4 Unsecured Claim.  Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) sixty (60) days following the Effective Date or (b) sixty (60) days after the Debtor receives actual notice of the filing of such Claim.

9.2.2   Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor effects service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Rule 7004 of the Bankruptcy Rules, (b) to the extent counsel

for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

9.2.3    Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise.  If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution.  The Debtor, at any time, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim.  The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

9.3    **Distributions as to Allowed Claims**.

9.3.1    Each Holder of an Allowed Unsecured Claim in Class 4 shall receive, on the applicable Distribution Date, a Cash Distribution in the amount of such Holder's Pro Rata Share of the distribution to Unsecured Creditors, provided, however, no distribution less than $10.00 shall be required.

9.3.2    Notwithstanding any provision herein to the contrary, no Distribution shall be made to the Holder of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.  If, on any applicable Distribution Date, any Disputed Claims remain, then the Debtor shall withhold from any such Distribution and escrow the amount of funds that would be necessary to make the same proportionate distribution to the Holders of all Claims, as if each such Disputed Claims were Allowed Claims.  At such time that such Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive the Distribution to which such Holder is then entitled under the Amended Plan.

9.3.3    Notwithstanding any provision herein to the contrary, if, on any applicable Distribution Date, the Holder of a Claim is subject to a proceeding against it by the Debtor or its

Estate, the Debtor may withhold and escrow a Distribution to such Holder until the final resolution of such proceeding.

9.3.4    A Distribution to a Holder of an Allowed Claim shall be made at the address of such Holder set forth in the Schedules or on the books and records of the Debtor at the time of the Distribution, unless the Debtor has been notified in writing of a change of address, including by the filing of a Proof of Claim or a statement pursuant to Rule 3003 of the Bankruptcy Rules by such Holder that contains an address for such Holder different than the address for such Holder as set forth in the Schedules.  The Debtor may, but is not required to, identify a correct or more recent address for any Holder.  The Debtor shall not be liable for any Distribution sent to the address of record of a Holder in the absence of the written change thereof as provided herein.

9.4    **Unclaimed Distributions.**

9.4.1    If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within sixty (60) days of the date such check was issued, then the Debtor shall provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Amended Plan in respect of such Claim.

9.4.2    If a check for a Distribution made pursuant to the Amended Plan to any Holder of an Allowed Claim is returned to the Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Debtor as to such check within sixty (60) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Amended Plan in respect of such Claim.

9.4.3    Any unclaimed Distribution as described above shall become the property of the Debtor.

9.5    **Transfer of Claim.**

In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Debtor in writing of such transfer and provide sufficient written evidence of such transfer.  The Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Debtor shall have received written notice to the contrary.  Each transferee of any Claim shall take such Claim subject to the provisions of the Amended Plan and to any request made, waiver or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, the Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Amended Plan.

9.6     **One Distribution Per Holder.**

If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distribution hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

9.7     **Effect of Pre-Confirmation Distributions.**

Nothing in the Amended Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an Order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Amended Plan; and all such full or partial payments shall be deemed to be payments made under the Amended Plan for purposes of satisfying the obligations of the Debtor to such Holder under the Amended Plan.

9.8     **No Interest on Claims.**

Except as expressly stated in the Amended Plan, or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition Interest or the payment of Postpetition Interest, penalties, or late charges on account of such Allowed Claim for any purpose.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Disputed Claim becomes an Allowed Claim.

9.9     **Compliance with Tax Requirements.**

In connection with the Amended Plan, the Debtor shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Amended Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

## ARTICLE 10
## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THE AMENDED PLAN AND THE EFFECTIVE DATE

10.1    **Conditions Precedent to Confirmation of the Amended Plan.**

The following are conditions precedent to Confirmation of the Amended Plan, each of which may be waived by the Debtor:

10.1.1 The Bankruptcy Court shall have made such findings and determinations

27

regarding the Amended Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Amended Plan.

10.2    **Conditions Precedent to the Effective Date.**

The Amended Plan shall not be consummated and the Effective Date shall not occur unless each of the following conditions has been satisfied following the Confirmation Date or waived by the Debtor:

10.2.1  The Confirmation Order shall be a Final Order.

10.2.2  Each Amended Plan Document shall be in form and substance acceptable to the Debtor.

10.3    **Notice of the Effective Date.**

Promptly following the satisfaction or the waiver by the Debtor of all of the conditions set forth in Article 10.2, the Debtor shall file a notice (the "***Effective Date Notice***") with the Bankruptcy Court designating the Effective Date.  The Debtor shall serve the Effective Date Notice on all of the Notice Parties.

**ARTICLE 11**
**DISCHARGE, EXCULPATION FROM LIABILITY, RELEASE,**
**AND GENERAL INJUNCTION**

11.1    **Discharge of Claims and Termination of Equity Interests.**

Except as otherwise provided in the Amended Plan or in the Confirmation Order, the rights afforded in the Amended Plan and the payments and Distributions to be made hereunder shall be in exchange for and in complete satisfaction and discharge of all existing debts and Claims, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its Assets or properties to the fullest extent permitted by Section 1141 of the Bankruptcy Code. Except as provided in the Amended Plan, on the Effective Date, all existing Claims against the Debtor shall be, and shall be deemed to be, satisfied and discharged as to the Debtor only, and all Holders of Claims shall be precluded and enjoined from asserting against the Debtor, or any of their respective Assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder has filed a proof of Claim.

11.2    **Exculpation from Liability**

**The Debtor and its agents, officers, directors, Postpetition directors and officers, and the Professionals for the Debtor (acting in such capacity), (collectively, the "*Exculpated Parties*") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken, or omitted to be taken, in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Amended Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or**

document created or entered into, or any other act taken, or omitted to be taken, in connection with the Amended Plan or the Bankruptcy Case, in the case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party or breach of any contract or any fiduciary duty. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The rights granted under this Article 11.2 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a Amended Plan. This exculpation from liability provision is an integral part of the Amended Plan and is essential to its implementation.

11.3    **General Injunction**.

Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Amended Plan, as of the Effective Date, except as otherwise expressly provided in the Amended Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, or Liability that is discharged or terminated pursuant to the terms of the Amended Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, or Liabilities, other than actions brought to enforce any rights or obligations under the Amended Plan: (a) commencing or continuing in any manner any action or other proceeding against the Debtor or its Assets or Estate; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or its Assets or Estate; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor or their Assets or Estate; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or their Estate; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Amended Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or their Estate under the Amended Plan and the documents executed in connection therewith. The Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Amended Plan and is essential to its implementation.

11.4    **Term of Existing Injunctions or Stays**.

11.4.1  All injunctions or automatic stays provided for in the Bankruptcy Case pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

11.4.2  With respect to all lawsuits or other legal proceedings ("*Lawsuits*") pending in courts in any jurisdiction (other than the Bankruptcy Court) in which the Debtor was listed as a defendant and that seek to establish the Debtor's liability on Prepetition Claims asserted therein and that are stayed pursuant to Section 362 of the Bankruptcy Code, such Lawsuits shall be deemed dismissed as of the Effective Date, unless the Debtor affirmatively elect to have the Debtor's liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such Lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Debtor affirmatively elect to have the automatic stay lifted and to have the Debtor's liability established by such other courts; and the Prepetition Claims at issue in such Lawsuits shall be determined and either Allowed or disallowed in whole or part by the Bankruptcy Court pursuant to the applicable provisions of the Amended Plan, unless otherwise elected by the Debtor as provided herein. To be clear, any Lawsuits pending in courts in any jurisdiction in which the Debtor is a plaintiff or seeks to establish a claim against another party are not subject to this Article and shall not be deemed dismissed and are Causes of Actions being vested in the Debtor under this Amended Plan.

11.5   **No Liability for Tax Claims**.

Unless a taxing Governmental Unit has asserted a Claim against the Debtor before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be Allowed against the Debtor or its officers, directors, or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period or (ii) an audit of any return for a period before the Petition Date.

## ARTICLE 12
## RETENTION OF JURISDICTION

12.1   **General Retention**.

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Case are closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Amended Plan are carried out.

12.2   **Specific Purposes**.

In addition to the general retention of jurisdiction set forth in Article 12.1, after Confirmation of the Amended Plan and until the Bankruptcy Case is closed, the Bankruptcy

Court shall retain jurisdiction of the Bankruptcy Case for the following specific purposes:

12.2.1       to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims or Equity Interests;

12.2.2       to determine any and all cases, controversies, suits or disputes arising under or relating to the Bankruptcy Case, the Amended Plan or the Confirmation Order (including regarding the effect of any release, exculpation from liability, discharge, limitation of liability, or injunction provisions provided for herein or affected hereby and regarding whether the conditions precedent to the consummation and/or Effective Date of the Amended Plan have been satisfied);

12.2.3       to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Bankruptcy Case; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses incurred by the Professionals for Post-Effective Date services that are rendered to the Debtor;

12.2.4       to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Amended Plan) for the rejection, assumption, or assignment of executory contracts or unexpired leases to which the Debtor are a party or with respect to which the Debtor may be liable, and to determine the allowance of any Claims resulting from the rejection thereof or any Cure Claims;

12.2.5       to determine any and all motions, applications, adversary proceedings, contested or litigated matters, causes of action, Litigation Claims, and any other matters involving the Debtor, including approval of proposed settlements thereof;

12.2.6       to enforce, interpret and administer the terms and provisions of the Amended Plan and the Amended Plan Documents;

12.2.7       to modify any provisions of the Amended Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

12.2.8       to consider and act on the compromise and settlement of any Claim against, or Equity Interest in, the Debtor or its Estate;

12.2.9       to assure the performance by the Debtor of its obligations under the Amended Plan;

12.2.10       to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Amended Plan, the Amended Plan Documents, the Confirmation Order, or any exhibits or

schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Amended Plan, including the adjustment of the date(s) of performance under the Amended Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Amended Plan may be substantially realized thereby;

12.2.11     to resolve any disputes concerning any release or exculpation of, or limitation of liability as to, a non-debtor (including any Professional) hereunder or the injunction against acts, employment of process or actions against such non-debtor (including any Professional) arising hereunder;

12.2.12     to enforce all orders, judgments, injunctions and rulings entered in connection with the Bankruptcy Case;

12.2.13     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Amended Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Amended Plan, the Disclosure Statement or the Confirmation Order, including the Amended Plan Documents;

12.2.14     to review and approve any sale or transfer of assets or Property by the Debtor that occurred prior to or after the date of the Amended Plan, and to determine all questions and disputes regarding such sales or transfers;

12.2.15     to determine all questions and disputes regarding title to the Assets or Property of the Debtor;

12.2.16     to determine any and all matters, disputes and proceedings relating to the Litigation Claims, whether arising before or after the Effective Date;

12.2.17     to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising on or prior to the Effective Date or arising on account of transactions contemplated by the Amended Plan;

12.2.18     to resolve any determinations which may be requested by the Debtor of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

12.2.19     to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Amended Plan or the Confirmation Order;

12.2.20     to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

12.2.21     to determine any other matters that may arise in connection with or

relating to the Amended Plan, the Disclosure Statement, the Confirmation Order or the Amended Plan Documents;

   12.2.22  to enter such orders as are necessary to implement and enforce the injunctions described herein;

   12.2.23  to enforce the obligations of any purchaser of any Property;

   12.2.24  to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and,

   12.2.25  to enter an order concluding and terminating the Bankruptcy Case.

12.3  **Reopening of the Bankruptcy Case.**

   In addition to the retention of jurisdiction set forth in Articles 12.1 and 12.2, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case to enter an order reopening the Bankruptcy Case after it has been closed.

**ARTICLE 13**
**MODIFICATION OF AMENDED PLAN AND CONFIRMATION OVER OBJECTIONS**

13.1  **Modification of Amended Plan.**

   13.1.1 The Debtor may modify the Amended Plan at any time prior to the entry of the Confirmation Order provided that the Amended Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

   13.1.2 After the entry of the Confirmation Order, the Debtor may modify the Amended Plan to remedy any defect or omission herein, or to reconcile any inconsistencies between the Amended Plan and the Confirmation Order, as may be necessary to carry out the purposes and effects of the Amended Plan, provided that (a) the Debtor obtain Bankruptcy Court approval for such modification, after notice to the Notice Parties and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims or Equity Interests under the Amended Plan.

   13.1.3 After the entry of the Confirmation Order and before substantial consummation of the Amended Plan, the Debtor may modify the Amended Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims or Equity Interests, provided that (a) the Amended Plan, as modified, meets applicable Bankruptcy Code requirements, (b) the Debtor obtain Bankruptcy Court approval for such modification, after notice to the Notice Parties and the Class of Claims or Equity Interests materially adversely affected, and a hearing, (c) such modification is accepted by (i) at least two-thirds in dollar amount, and more than one-half in number, of the Allowed Claims actually voting in each Class

of Claims adversely affected by such modification or (ii) at least two-thirds in amount of Allowed Equity Interests actually voting in each Class of Equity Interests adversely affected by such modification, and (d) the Debtor comply with Section 1125 of the Bankruptcy Code with respect to the Amended Plan, as modified.

13.1.4 Notwithstanding anything to the contrary contained in this Article 13.1 or elsewhere in the Amended Plan, the Amended Plan may not be altered, amended or modified without the written consent of the Debtor.

13.2 **Confirmation Over Objections.**

If any Impaired Class of Claims votes against the Amended Plan, the Debtor may request, and shall be allowed, to modify the terms of the Amended Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting Distributions to all Classes at or below the level of the objecting Class, or reallocating such Distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtor may make such modifications or amendments to the Amended Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing. No such modifications shall require any resolicitation of acceptances as to the Amended Plan by any Class of Claims unless the Bankruptcy Court shall require otherwise. Notwithstanding any provision of the Amended Plan to the contrary, the Debtor reserves any and all rights it may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Amended Plan.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

14.1 **No Admissions.**

The Amended Plan provides for the resolution, settlement and compromise of Claims against, and Equity Interests in, the Debtor. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date.

14.2 **Revocation or Withdrawal of the Amended Plan.**

The Debtor reserve the right to revoke or withdraw the Amended Plan prior to the Confirmation Date. If the Debtor revoke or withdraw the Amended Plan, or if Confirmation of the Amended Plan does not occur, then the Amended Plan shall be deemed null and void in all respects and nothing contained in the Amended Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

14.3 **Standard for Approval of the Bankruptcy Court.**

In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

14.4    **Further Assurances.**

Each of the Debtor agree, and are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Amended Plan.

14.5    **Headings.**

The headings and table of contents used in the Amended Plan are for convenience and reference only and shall not constitute a part of the Amended Plan for any other purpose or in any manner affect the construction of the provisions of the Amended Plan.

14.6    **Notices.**

All notices, requests or other documents in connection with, or required to be served by, the Amended Plan shall be in writing and shall be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to the Debtor, c/o Mike Dal Lago, Esq., Dal Lago Law, 999 Vanderbilt Beach Road, Suite 200, Naples, FL 34108.

14.7    **Governing Law.**

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Amended Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Amended Plan provides otherwise, the rights and obligations arising under the Amended Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

14.8    **Limitation on Allowance.**

No attorneys' fees, punitive damages, penalties, exemplary damages, or interest arising from any Claim or Equity Interest shall be paid except as otherwise expressly provided in the Amended Plan or as Allowed by a Final Order of the Bankruptcy Court.

14.9    **Estimated Claims.**

To the extent any Claim is estimated for any purpose other than for voting on the Amended Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

14.10  **Consent to Jurisdiction.**

Upon any default under the Amended Plan, the Debtor consent to the jurisdiction of the Bankruptcy Court and agrees that the Bankruptcy Court shall be the preferred forum for all proceedings relating to any such default.

By accepting any Distribution under or in connection with the Amended Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim or Cure Claim, by voting on the Amended Plan, by reason of being served with notice of the filing of the Bankruptcy Case or the Confirmation Hearing, or by entering an appearance in the Bankruptcy Case, Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Debtor, the Amended Plan or the Bankruptcy Case, including the matters and purposes set forth in Article 12 of the Amended Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the Amended Plan.

14.11  **Setoffs.**

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, set off against any Claim and any Distribution to be made pursuant to the Amended Plan in respect of such Claim, claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against the Holder of such Claim.

14.12  **Successors and Assigns.**

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Amended Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

14.13  **Modification of Payment Terms.**

The Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

14.14  **Entire Agreement.**

The Amended Plan and the Amended Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents. No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter thereof, other than as expressly provided for therein or as may hereafter be agreed to by such Person or Entity in writing.

14.15    **Severability of Amended Plan Provisions.**

If, prior to Confirmation of the Amended Plan, any term or provision of the Amended Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Amended Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Amended Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

14.16    **Controlling Document.**

To the extent the Confirmation Order or the Amended Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Amended Plan or the Confirmation Order, the Confirmation Order and the Amended Plan shall control over the Disclosure Statement and any such agreement.  The Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Amended Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Amended Plan, the Confirmation Order shall control over the Amended Plan.

14.17    **Computation of Time.**

In computing any period of time prescribed or allowed by the Amended Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

14.18    **Substantial Consummation.**

The Amended Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon commencement of the Distributions described in Article 9.1 of the Amended Plan.

14.19    **De Minimis Distributions**

No Cash payment of less than five dollars ($5.00) shall be made to any Holder of an Allowed Claim on account of such Allowed Claim.

Dated: February 7, 2019

Respectfully submitted,

**Truth Technologies, Inc.**

By:  Egide Thein, President/CEO

*/s/ Michael R. Dal Lago*
Florida Bar No. 0102185
Dal Lago Law
999 Vanderbilt Beach Road, Suite 200
Naples, FL 34108
Telephone:  (239) 571.6877
Email:  mike@dallagolaw.com

*Counsel for Truth Technologies, Inc.*

EXHIBIT A

**ASSUMED CONTRACTS**

1.  None at this time.

EXHIBIT B

**REJECTED CONTRACTS**

2.  Strand Lease – first leased location is for office space at 5621 Strand Boulevard, Suite 305, Naples, Florida 34110, within "Strand Executive Park".

3.  Pelican Marsh Lease - second leased location is for office space at 2341 Cheshire Lane, Naples, Florida 34109.

4.  New York Lease – third leased location is for office space at 57 West 57th Street, 3rd and 4th floor, New York, New York 10019.

<u>EXHIBIT C</u>

**LIST OF POTENTIAL AVOIDANCE ACTIONS**

1.  Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: CAPCALL, E Advance Svcs, LLC, 122 E 42nd Street, Suite 2112, New York, NY 10168 with the total amount of value of $30,992.00;

2.  Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: CBSG, d/b/a Par Funding, 20 N 3rd Street, Philadelphia, PA 19106 with the total amount of value of $71,079.30;

3.  Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: Queen Funding, LLC d/b/a GTR Queen, 2221 NE 164th Street, Suite 1144, Miami Beach, FL 33160 with the total amount of value of $50,376.00;

4.  Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: Kash, a/k/a Empire Funding, Attn: Ariel Bouskila, Esq., Berkovitch & Bouskila, PLLC, 40 Exchange Place, Suite 1306, New York, NY with the total amount of value of $50,555.00;

5.  Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: First Global Capital, 1250 E Hallandale Beach Blvd, Suite 406, Hallandale, FL 33009 with the total amount of value of $303,230.35;

6.  Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: Lewis Brisbois Bisgaard, 633 W. Fifth Ave, Suite 4000, Los Angeles, CA 90071 with the total amount of value of $244,015.14;

7.  Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: McGuire Woods LLP, Corporate Office Center, Tysons II, Tysons, VA 22102-4215 with the total amount of value of $96,497.52;

8.  Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: Midnight Advance, 1080 McDonald Ave, Suite 206, Brooklyn, NY 11230 with the total amount of value of $48,514.00;

9.  Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: Midnight II Advance, 1080 McDonald Ave, Suite 206, Brooklyn, NY 11230 with the total amount of value of $59,960.00; and

10. Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: Regulatory DataCorp, Inc., 211 S. Gulph Rd #125, King of Prussia, PA 19406 with the total amount of value of $10,323.60.

11. Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: Regus, 11555 Heron Bay Blvd., Suite 200, Coral Springs, FL 33076 with the total amount of value of $37,539.00.

12. Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: ROC, 260 Christopher Lane, Staten Island, NY 10314 with the total amount of value of $74,779.95.

13. Potential avoidance, under Section 541 of the Bankruptcy Code, of payments made by the Debtor to: Yellowstone Capital, 30 Broad Street, 14th Floor, Suite 1462, New York, NY 10004 with the total amount of value of $39,166.00.